IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | NO. 3:19-cr-00296 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| | ) | |
| DAVID WIGGINS | ) | |

## ORDER AND MEMORANDUM OPINION

Pending before the Court is Defendant's "Motion to Suppress Photo Identification, In Court Identification and Request for Evidentiary Hearing" (Doc. No. 46, "Motion"). The Government filed a response in opposition, (Doc. No. 48, "Response"), and Defendant filed a reply (Doc. No. 49, "Reply"). For the following reasons, Defendant's Motion is **DENIED**.

### BACKGROUND[1]

On February 2, 2019 at approximately 8:47 p.m., a robbery occurred at the Tennessee Quick Cash store located in Madison, Tennessee. Tennessee Quick Cash employee Briana Avery was the sole witness to the robbery. Metro Nashville Police Department ("MNPD") Officer Cecilia Gomez arrived on scene and took Ms. Avery's statement. Ms. Avery described the robber as a black male wearing a black hat, black sweater with a white undershirt, and black pants. She also described the robber as wearing prescription glasses. Officer Gomez's Incident Report indicates that the robber was a "Black or African American" male between 40 and 50 years old, around five foot nine inches in height and weighing 200 pounds.

---

[1] These facts are taken from the Incident Report (Doc. No. 49-1) and the Photographic Identification Form (Doc. No. 46-1) that Defendant relies on in his own factual recitation section of his Motion and appears to accept as accurate for purposes of the Motion.

An anonymous Crime Stoppers tip identified Defendant as a suspect in the robbery. Detective Richard Gilbert assembled a photographic lineup,[2] which he showed to Ms. Avery on February 8, 2019. The photo array comprises six photos of black[3] males (each a "comparator" and collectively, "comparators") arranged in two equal rows of three. On the photo array, Defendant's picture (numbered 3) has been circled with the signature of the eyewitness (Ms. Avery) appearing below his image, apparently to memorialize her identification of Defendant as the robber. When Ms. Avery identified Defendant in the photo array she stated that "[it's] his chin."

Defendant was subsequently charged in an indictment with one count of so-called Hobbs Act robbery in violation of 18 U.S.C. § 1951(b) and one count of possession of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. No. 1).

## LEGAL STANDARD

The admission of evidence of an out-of-court identification violates the due process clause only when the identification procedures are so unnecessarily suggestive that they create a "a very substantial likelihood if irreparable misidentification." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)) (internal quotation marks omitted).[4] To determine whether a violation of due process occurred in a photograph identification, courts apply a two-prong test. *Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007) (citing

---

[2] The photographic lineup at issue is referred to interchangeably in this Opinion as "photo array" and "photographic lineup."

[3] There is nothing in the photo array or Incident Report, and no information available to the Court, to indicate that either the robber or the comparators are actually American, so the Court herein uses the term "black" instead of African American.

[4] The circumstances of the particular out-of-court identification involved here suggest that it would be excluded from the definition of hearsay under Fed. R. Evid. 801. Because of this and its obvious relevance, this particular out-of-court identification seemingly would be admissible unless (1) its probativeness somehow was substantially outweighed by the danger of unfair prejudice, *see* Fed. R. Evid. 403, or (2) its admission is barred by due process considerations as Defendant claims via the Motion.

2

*Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005)). First, "the defendant must show that the identification procedure was unduly suggestive." *United States v. Sullivan*, 431 F.3d 976, 985 (2005). If the defendant does not carry this burden, admission of the out-of-court identification is not a due process violation and the court's inquiry can end there. *See Perry*, 565 U.S. at 248. If it was, the Court then must "consider whether the evidence was nevertheless reliable despite the impermissible suggestiveness of the identification procedure." *Haliym*, 492 F.3d at 704 (citing *Howard*, 405 F.3d at 469).

A photographic lineup may be unduly suggestive if "a witness's attention was directed to a suspect because of police conduct." *Howard*, 405 F.3d at 470 (citing 2-5 Crim. Con. Law § 5.05(2)(b) (2004)). A law enforcement officer's intent "to prejudice the defendant" is not relevant to this determination. *Howard*, 405 F.3d at 470 (*Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986)). Rather, this analysis "questions whether the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection." *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001) (citing *United States v. Russell*, 532 F.2d 1063, 1068 (6th Cir. 1976)). At step one, "the primary evil to be avoided is a very substantial likelihood of irreparable misidentification.'" *Howard*, 405 F.3d at 470 (quoting *Neil v. Biggers*, 409 U.S. 188, 198 (1972)). This is an objective, totality-of-the-circumstances test examining the effects and circumstances of the identification procedure. *Id.* (citing *Thigpen*, 804 F.2d at 895).

If the photographic lineups are deemed unduly suggestive, the Court must then determine whether the out-of-court identification was reliable. To determine whether the identification was "independently reliable," the Court "consider[s] the totality of the circumstances, including the following factors: (1) the opportunity of the witness to view the defendant at the initial observation; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the

defendant; (4) the level of certainty shown by the witness at the pretrial identification; and (5) the length of time between the initial observation and the identification." *Id.* at 482 (citations omitted). The Court "weigh[s] these factors against any 'corrupting effect of the suggestive identification.'" *Id*. (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)).

Defendants who seek to suppress evidence allegedly obtained in violation of the Bill of Rights (including the Fifth Amendment in particular) bear the burden of proof. *See United States v. Cooper*, No. 7:16-CR-1-DCR-EBA-1, 2016 WL 11432399, at *4 (E.D. Ky. Apr. 29, 2016), *report and recommendation adopted*, No. CR 7:16-01-DCR, 2016 WL 2944661 (E.D. Ky. May 20, 2016); *see also United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) ("It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." (quotation omitted)); *United States v. Mack*, 442 F. App'x 881, 882 (4th Cir. 2011) ("The defendant bears the initial burden of production in challenging the admissibility of an out-of-court identification." (citing *United States v. Johnson*, 114 F.3d 435, 441 (4th Cir. 1997))). The Sixth Circuit has made clear that this burden of proof extends to both "the burden of production and persuasion." *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014) ("The defendant who requests suppression bears the burden of production and persuasion.").

ANALYSIS

Defendant attacks the photo array as being violative of his due process rights in three aspects. Specifically: (1) Defendant claims that he is "the only old guy in the photo array . . . [h]e appears to be twenty years older than the other five suspects" (Doc. No. 46 at 2); (2) Defendant argues that his "photograph is substantially larger than the other five photographs" (*id*.); and (3) Defendant asserts that he is "the only guy [in the photo array] wearing a white t-shirt" (*id*.). In its

4

Response, the Government argues that none of these arguments help Defendant to meet his initial burden of production to show that the photographic lineup in this case was unduly suggestive. (Doc. No. 48 at 3). Thus, the Government contends that "[b]ecause [Defendant] has not [met his initial burden], this Court can end the inquiry; there was not (nor can there be) a due process violation." (*Id.*). The Court will explore Defendant's arguments in turn.

I. *Defendant's Age*

As noted above, Defendant suggests that the photo array is unduly suggestive because he is "the only old guy in the photo array." (Doc. No. 46 at 2). The Government argues that Defendant's opinion as to this matter is simply not proof that the other comparators are substantially younger than Defendant. (Doc. No. 48 at 4). Further, the Government asserts that Defendant's assessment of the photo array "leaves plenty of room for subjective interpretation" and that, in the Government's view, at least two other comparators appear to be relatively close to Defendant's age and are therefore encompassed within the witness's description of the robber being between 40 and 50 years old. (*Id.*).[5]

The Court agrees with the Government. Upon review of the photo array, Defendant does appear to the Court to perhaps be the oldest comparator. However, it also appears to the Court that several comparators fall into the "40-50 year" age range given as a description of the robber by

---

[5] The Government also argues that "the Sixth Circuit has repeatedly held that a photo array is not suggestive where only the defendant is depicted with a personal attribute which is expressly referenced by a witness." (Doc. No. 48 at 4 (citing *United States v. Washington*, 714 F.3d 962, 968 (6th Cir. 2013); *United States v. Peterson*, 411 F. App'x 857, 864–65 (6th Cir. 2011); *Legenzoff v. Steckel*, 564 F. App'x 136, 144 (6th Cir. 2014))); *but see Raheem v. Kelly*, 257 F.3d 122, 134 (2d Cir. 2001) ("A lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator previously given by the witness and the other lineup participants obviously do not."). The Court is not sure how a photo array is not suggestive if only one comparator has a salient characteristic; it would seem that the array thereby tends to uniquely suggest this comparator as being the perpetrator. But the Court need not reach this argument, as it finds above that several comparators fall into the "40 – 50 years" age range, meaning that Defendant was far from the only comparator fitting the description of the robber in terms of age.

5

the witness. Specifically, the comparators in photos 2, 4, and 5 appear to the Court to be at least 40 years old. Thus, the fact that Defendant appears the oldest is not unduly suggestive because he is not the only person in the photo array that falls into the age-range category given by the witness and therefore, the "witness's attention [was not] directed to [Defendant]" as the only person that could potentially fit the suspect's description. *Howard*, 405 F.3d at 470. In his Reply, Defendant argues that "[i]t seems that anyone with good vision would also conclude that Mr. Wiggins is the only old guy in the bunch" and anyone that would conclude that other suspects in the photo array appear to be close to Defendant's age would need to "schedule[] an eye examination." (Doc. No. 49 at 2). With all due respect, the Court does not believe that one must have failing eyesight to reach the conclusion that at least four men (including Defendant) portrayed in the photo array could fall into the 40-50 age range. Rather, in the Court's view, this is a relatively obvious conclusion. To the extent Defendant's point is that Defendant is clearly the oldest of the group, the Court does not disagree; but the Court ascribes relatively little weight to this observation, since an eyewitness well might perceive that naturally one of the six has to be the oldest and might appear to be the oldest, and that being the oldest by no means makes that one the perpetrator rather than merely, well, the oldest.

Thus, the Court concludes that the the minor differences in age "'would hardly suggest to an identifying witness that [Defendant] was more likely to be the culprit." *United States v. Funches*, 84 F.3d 249, 253 (7th Cir. 1996) (quoting *United States v. Bautista*, 23 F.3d 726, 731 (2d Cir. 1994)). Thus, Defendant has not met his burden of production to show that Defendant's age as portrayed in the photograph is unduly suggestive.

II. *The Size of Defendant's Photo*

Defendant asserts that his "photograph is substantially larger than the other five

6

photographs." (Doc. No. 46 at 2). However, upon review of the photo array, the actual size of all six *photographs* in the array is the exact same. What the Government surmises that Defendant is actually attacking is the size of the image of the comparators' heads within the respective photographs, as Defendant's head does appear to be slightly larger (or more zoomed in, *i.e.*, taking up a larger portion of the area of the photograph) than the image of the head of the other comparators. The Court agrees that this is what Defendant was actually referring to.

Essentially disputing that Defendant stands out from the other comparators merely because there is something unique about his photo, the Government argues that that numerous comparators appear to be "oriented" in a unique way. While Defendant (comparator 3) may appear somewhat larger in his photo than the other comparators appear in theirs, comparator 5 appears smaller in his photo than the other comparators appear in theirs, comparator 2's head appears to be titled to the right, comparator 4's head is titled to the left, and comparator 6's picture has a completely different background color than do all other pictures in the photo array. (Doc. No. 48 at 6). The Government asserts that "these 'subject orientation issues' apply, at some level, to each of the suspects in this photo array such that it is impossible to say that one photo stands out for subject orientation alone. Because each photo has some subject orientation issue of one degree or another, the lineup cannot credibly be said to be unduly suggestive: if all the photos have some kind of subject orientation issue than none stands out impermissibly." (*Id*. at 6). The Government also notes that there is a "dearth of case law on this issue" and compares what it contends are analogous cases reviewing differences in background color in a photo array and determining that such differences were not unduly suggestive. (*Id*. at 7 (citing *Legenzoff*, 564 F. App'x at 143–44; *United States v. McComb*, 249 F. App'x 429, 436–39 (6th Cir. 2007); *United States v. Soto*, 124 F. App'x 956, 965 (6th Cir. 2005))).

7

Ultimately, the Court agrees with the gist of the Government's argument. The mere fact that Defendant's photograph has something unique about it does not make the photo array unduly suggestive, because Defendant's photo is far from the only one to have some unique characteristic.

In his Reply, Defendant asserts that the Court should conduct a simple analysis—"[t]he question for the Court is Mr. Wiggins' head shot substantially bigger than the others and if so (of course it is) does this fact make the spread unduly suggestive when looking all the other factors as a whole." (Doc. No. 49 at 3). Essentially Defendant asserts that this Court must focus on the particular uniqueness reflected in Defendant's photo and decide whether such uniqueness (irrespective of the fact that other comparators' photos have unique qualities) makes the photo array unduly suggestive as to Defendant.

As noted above, the Court agrees with Defendant that he appears larger in his photo than the other persons in the photo array. And the Court does not dispute that even if every comparator has something unique regarding his photograph, the particular uniqueness of Defendant's photograph conceivably could rise to the level where it makes the photo array unduly suggestive. However, in the Court's view, that is simply not the case here. The Court perceives the difference in size as more slight than "substantial" and certainly not so striking as to render the array unduly suggestive. The difference in size in actuality is minor and would not, in the Court's view, direct a witness's attention to Defendant in the photo array. *See Howard*, 405 F.3d at 470. The differences in size cited by Defendant are inconsequential and fail to render the photo array suggestive, much less impermissibly suggestive. Thus, Defendant has not met his burden of production to show that the size of Defendant's photograph in the photo array is unduly suggestive.

III. *Defendant's White Shirt*

Finally, Defendant argues that he "is the only guy wearing a white t-shirt" in the photo

array. Defendant does not explain how, and the Court does not see how, Defendant's white shirt results in the photo array being unduly suggestive. As the Government points out, the clothing of each comparator is different from the others in style and color. Thus, Defendant's white shirt would not "steer[]" the witness to choose Defendant's photo. *Wilson*, 250 F.3d at 397; *see also United States v. Matthias*, No. CR 2016-0025, 2017 WL 2434458, at *4 (D.V.I. June 5, 2017) ("Defendant's white shirt is of no real significance here because the individuals shown in the photo array are wearing shirts of various colors—dark-colored shirts, a dark colored shirt with a white undershirt, a red/orange shirt, and what appears to be a salmon colored shirt. Thus, Defendant's white shirt does not distinguish Matthias from the other individuals pictured any more, for example, than the red/orange shirt or the dark shirt with the white undershirt distinguishes those individuals.").

Additionally, although the witness described the suspect as wearing a black sweater and white undershirt, the fact that Defendant is wearing a white shirt in the photo array does not make the photo array unduly suggestive in light of the similarities (as noted below) between Defendant and the other comparators. *See, e.g., United States v. Peterson*, 411 F. App'x 857, 864 (6th Cir. 2011) (rejecting defendant's argument "that the photo array was unduly suggestive because his photo was the only one in dark clothing, which was part of the description of the robber," since this and other discrepancies did not outweigh the "many substantial similarities" between the photos). Therefore, the Court finds that Defendant's white shirt does not indicate that the photo array was unduly suggestive.

## ADDITIONAL CONSIDERATIONS

Here, Defendant and the comparators share many similarities, such as race, hair style (bald), and build. Unsurprisingly, this cuts against a finding of undue suggestiveness. *See United*

9

*States v. Reamey*, 132 F. App'x 613, 616 (6th Cir. 2005) (holding that in light of the many similarities between the defendant and persons in the photo array, "the alleged differences in clothing, expression, and age are too minor to render the spread unduly suggestive"); *Peterson*, 411 F. App'x at 865 ("Having reviewed the photo array, we conclude that it is not unduly suggestive. In light of the many substantial similarities between those in the photo array, the alleged differences in clothing and age are too minor to render the spread unduly suggestive."). Thus, the Court concludes that in light of these significant similarities, the differences in age between Defendant and the other comparators is too minor to be unduly suggestive. *See Walton v. Falk*, No. 13-CV-00403-RM-BNB, 2014 WL 1758212, at *8 (D. Colo. May 1, 2014) (finding that a photo array was not unduly suggestive where "there [was] a noticeable variance in age of the men depicted" but three men in the photo array were "certainly within [the age range identified by the witness], and all the men depicted have similar facial features, facial hair, hair styles, and hair color and are of the same race"). Moreover, Defendant notes in his own brief (Doc. No. 46 at 2) that the feature the victim focused on in identifying Defendant as the robber was "his chin" and not any of the attributes Defendant contends were unduly suggestive. Thus, based on a totality of the circumstances, this Court concludes that the photo array was not unduly suggestive and that there was not a substantial risk of misidentification.

## CONCLUSION

As noted above, a finding that a photo array is not unduly suggestive generally ends the inquiry and a motion to suppress may be denied entirely on this basis. *See United States v. Watson*, 540 F. App'x 512, 515 (6th Cir. 2013) ("If the defendant fails to show that the identification procedure was tainted by undue suggestiveness, our analysis ends."). Thus, this concludes the Court's analysis and Defendant's Motion is DENIED. A trial scheduling order will be entered

promptly.

       IT IS SO ORDERED.

                                                                         _____
                                                                         ELI RICHARDSON
                                                                         UNITED STATES DISTRICT JUDGE